UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,　　　　　　　No. 10-20036

　　　　　Plaintiff,　　　　　　　　　　　District Judge Victoria A. Roberts

v.　　　　　　　　　　　　　　　　　　　Magistrate Judge R. Steven Whalen

MICHAEL CORLEY,

　　　　　Defendant.
　　　　　　　　　　　　　　　　　　　　/

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Michael Corley's "Motion for Evidentiary Hearing to Suppress Illegally Seized Evidence Pursuant to an Invalid Search Warrant" [Docket #13]. Because this is in substance a motion to suppress evidence, I must proceed by Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the request for an evidentiary hearing and the motion to suppress be DENIED.

**I.　FACTS**

On August 21, 2009, a state court judge issued a search warrant for 19205 Biltmore Street in Detroit, Michigan, a residence allegedly used by Defendant Corley to store marijuana. The warrant was based on the affidavit of DEA Agent Darren Wilson.[1]

In his affidavit, Agent Wilson stated that during the month of July, 2009, he and another agent obtained information from a confidential source ("CS") that the Defendant was selling marijuana from his residence at 20044 Ashton Street in Detroit, and utilizing

---

[1] The search warrant and Agent Wilson's affidavit in support are attached to Defendant's motion as Exhibit A and to the government's response as Exhibit 1.

-1-

19205 Biltmore as a "stash house" to store marijuana. Agent Wilson stated that the CS "on several occasions has provided information to law enforcement that has been corroborated by law enforcement and deemed to be truthful and reliable." On an unspecified date in July, 2009, the CS, working under the supervision of Agent Wilson and another agent, made a controlled purchase of marijuana from the Defendant at the Ashton Street address. Prior to the controlled buy, agents observed the Defendant leave 19205 Biltmore and arrive at 20044 Ashton.

On August 20, 2009, agents observed the Defendant get out of a silver Cadillac and enter his residence on Ashton street. Some minutes later, he came back, placed a light brown plastic grocery bag in the Cadillac, and drove back to the Biltmore residence. The Defendant drove away after a few minutes, and the agents lost contact with him. However, about 20 minutes later, agents saw the Defendant arrive back at Biltmore, this time driving a green Cadillac. He was observed "going to the trunk of the vehicle with a white grocery bag," reaching into the trunk, and then entering the Biltmore house.

About 30 minutes later, an "unknown black male" arrived at Biltmore in a black Chrysler. Fifteen minutes later, this individual and the Defendant left the residence. The unknown male drove away in his Chrysler. The Defendant placed a black duffel bag in the trunk of the green Cadillac, and sat in the car, using a cell phone. After about 15 minutes, the Defendant drove to 20044 Ashton, parking in the driveway. There, he met with another "unknown black male." At this time, the green Cadillac was parked "trunk to trunk" with a gold Geo, near the garage. The trunk of the Geo was open, and Defendant and the unknown individual were between the two cars.

Eventually, the gold Geo left and pulled into a parking lot at the corner of Wyoming and Eight Mile Road in Detroit. A grey 1987 Chevrolet parked next to the Geo.

A  passenger in the Chevy removed a white box from the trunk of the Geo and placed it in the trunk of the Chevy.  A traffic stop was subsequently effected on the Chevy; the driver gave consent to open the trunk, and the agents observed four large bags of marijuana inside a white box that was partially open. Several of the bags "were heat sealed and vacuum packed consistent [with a] larger scale Marijuana distribution."

The Defendant was indicted for three offenses, including possession with intent to distribute marijuana, 18 U.S.C. § 841(a)(1). On June 2, 2010, Defendant filed the present motion, arguing that (1) Agent Wilson's affidavit did not support a finding of probable cause to issue a search warrant, and (2) the "good faith exception" to the exclusionary rule found in *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is not applicable under these facts.  The Court set a hearing date of June 15, 2010, at 10:00 a.m., and an electronic notice of hearing was sent to all parties.  However, neither Defendant nor his counsel appeared as directed.  The matter is therefore submitted on the written pleadings.

### B.  Probable Cause

In *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court set forth the basic standard for assessing whether an affidavit establishes probable cause to issue a search warrant:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him,...there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed" (internal quotation marks omitted).

A magistrate's probable cause determination "should be paid great deference by reviewing courts." *Id.*, 462 U.S. at 236.  However, that deference is not absolute, and reviewing courts must ensure that the issuing magistrate did "not serve merely as a rubber

stamp for the police." *United States v. Leon*, *supra,* 468 U.S. at 914, quoting *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Leon,* at 915, quoting *Illinois v. Gates, supra*, 462 U.S. at 239. In assessing the issuing magistrate's probable cause determination, the reviewing court is concerned only with those facts which appear within the four corners of the affidavit. *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973); *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998), citing *Whitely v. Warden*, 401 U.S. 560, 564-65, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005).[2]

In this case, part of the affidavit was based on hearsay information from a confidential source. In such circumstances, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information...." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). In *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005), the Court held that where an informant's past reliability is spelled out in the affidavit, probable cause may be found even without independent police corroboration of the informant's story.[3]

---

[2] Because this motion must be determined based on the four corners of the affidavit, the Defendant is not entitled to an evidentiary hearing. The *Leon*/good-faith analysis is likewise restricted to the face of the affidavit. "We further conclude that a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *Laughton* at 751. *See also United States v. Hython*, 443 F.3d 480, 487 (6th Cir. 2006).

[3] *McCraven* based this holding on *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000)(en banc) and *United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986), *cert. denied* 479 U.S. 1092 (1987).

In this case, Agent Miller described the CS's past reliability in rather conclusory terms, stating only that the informant "on several occasions has provided information to law enforcement that has been corroborated by law enforcement and deemed to be truthful and reliable." *See e.g., United States v. Reddrick*, 90 F.3d 1276, 1280 (7th Cir.1996) (a merely conclusory statement of the affiant's belief in an informant's past credibility, unsupported by further detail, found insufficient to support a finding of probable cause). However, an affidavit that fails to adequately establish the past reliability of a confidential informant may still pass constitutional muster if there is independent corroboration of the informant's information. *See United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004) ("[A]n affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information."); *United States v. Tuttle,* 200 F.3d 892, 894 (6th Cir.2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information.").

Agent Miller provided sufficient corroboration of the CS's claim that the Defendant sold marijuana out of his Ashton Street residence and stored marijuana at the Biltmore street address. First, the CS made a controlled buy at the Ashton house in July of 2009, under the strict supervision of DEA agents. *See United States v. Coffee,* 434 F.3d 887, 894-95 (6th Cir.2006) (independent police corroboration of an informant's allegations based on details of a controlled narcotics purchase).

The controlled purchase supports a finding that evidence of marijuana sales would be found in the Ashton house in July of 2009. But what about the Biltmore address on

August 21, 2009? Probable cause has both a temporal and a locational component. An affidavit may not employ "stale" information, *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998), and there must be some "nexus between the place to be searched and the evidence sought." *United States v. Higgins,* 557 F.3d 381, 390 (6th Cir.2009). The surveillance that took place on August 20, 2009, viewed in the context of the information from the CS and the controlled buy in July, supports the state judge's finding of probable cause to search the Biltmore residence.

On August 20, 2009, the police stopped a grey, 1987 Chevrolet. A consent search of the trunk revealed four large, heat-sealed bags of marijuana inside a white box. The packaging was consistent with a "larger scale" marijuana operation. The chronology of events leading to that discovery provides a nexus between the marijuana found in the Chevy and the Biltmore residence.

Earlier that day, agents saw the Defendant, in possession of a brown grocery bag, drive to Biltmore from his residence on Ashton. He left, but returned to Biltmore about 20 minutes later, this time driving a green Cadillac. Carrying a grocery bag, he went into the trunk of the Cadillac, and entered the Biltmore house. An unidentified individual arrived at the house, and about a half hour later, the Defendant placed a green duffel bag in the Cadillac, talked on his cell phone, and drove back to the Ashton house. There, he met with another unknown individual. The Defendant's Cadillac was parked near the garage, "trunk to trunk" with a gold Geo, and the two individuals were in between the cars, with the Geo's trunk open. The Geo was driven away, and met up with the 1987 Chevy in a parking lot. A passenger in the Chevy removed a white box from the trunk of the Geo and placed it in the trunk of the Chevy. The white box, as the agents later discovered, contained the marijuana.

Thus, there is a direct and uninterrupted chain of events that leads from the Defendant leaving Biltmore with a duffel bag on August 20, 2009 (after entering the house with a shopping bag) and the agents seizing marijuana from the 1987 Chevy. This sequence of events corroborates the CS's earlier claim that the Defendant utilized Biltmore to store marijuana, and provides a "substantial basis" for the state court judge's probable cause determination. The Defendant's motion to suppress should therefore be denied.

### C.     The Good Faith Exception to the Exclusionary Rule

Generally, when the police obtain evidence in violation of the Fourth Amendment, "the judicially developed exclusionary rule...precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). However, in *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court carved out a so-called "good-faith exception" to the exclusionary rule, directing that courts should not suppress evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *See also United States v. Weaver, supra*, 99 F.3d at 1380 ("[T]he exclusionary rule 'should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" (quoting *Leon*, 468 U.S. at 905)). Nevertheless, there are exceptions to the good-faith exception, and the Sixth Circuit has identified at least four circumstances where its application would be inappropriate: (1) where the issuing magistrate is misled by information the affiant knew was false, or would have known was false except for his or her reckless disregard for the truth; (2) where the magistrate totally abandoned his or her judicial role; (3) where the affidavit is so completely lacking in factual support that an

official belief that probable cause exists would be entirely unreasonable; and (4) where the warrant itself is facially deficient, for example, failing to particularize the place to be searched or the items to be seized. *Weaver*, 99 F.3d at 1380.

In this case, the Defendant does not claim that Agent Wilson's affidavit contained false information, that the warrant was facially deficient, or that the state court judge who issued the warrant abandoned his judicial role. Rather, it is the third *Leon* exception–objectively reasonable reliance–that is at issue. "The showing required to establish that reliance was 'objectively reasonable' is less than the 'substantial basis' showing required to establish probable cause." *United States v. Hython, supra*, 443 F.3d at 484. Stated differently, "it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for good-faith reliance." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

In *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004), aerial police surveillance revealed a patch of marijuana growing in a field approximately 900 feet from the defendants' house. The Sixth Circuit held that an affidavit in support of a search warrant for the house was insufficient because it "did not provide a substantial basis for the issuing judge' conclusion that probable cause existed to search the Carpenters' residence, because it failed to set forth sufficient facts that incriminating evidence would be found *there*, rather than in some other place." However, even though the search warrant was invalid, the Court applied the *Leon* good-faith exception to the exclusionary rule because there was at least a minimally sufficient nexus between the house and the marijuana:

> "The affidavit in the case before us failed to provide a substantial basis for probable cause because it did not provide the required nexus between the residence and the illegal activity. However, the affidavit was not completely devoid of any nexus between the residence and the marijuana

that the police observed. Rather, it noted both that the marijuana was growing 'near' the residence and that 'there is a road connecting' the residence and the marijuana plants." *Id.*, at 595-96.

*See also United States v. VanShutters*, 163 F.3d 331, 331, 337 (6th Cir. 1998) (applying *Leon* where there were no facts connecting the defendant, a suspected counterfeiter, to the residence searched, but noting that "only a police officer with extraordinary legal training would have detected any deficiencies" in the affidavit); *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994) (*Leon* applied to search of a safe deposit box, where the search warrant affidavit provided "no material connection between the bank and any criminal activity," but was based primarily on the officer's "training and experience").

Even if Agent Wilson's affidavit were found to be lacking for purposes of probable cause, the chain of events he described provides at least some nexus between the Biltmore house and the marijuana discovered in the Chevy. The connection between Biltmore and the illegal drug activity is at least as strong as that shown in *Carpenter, VanShutters and Schultz*. It certainly cannot be said that the affidavit in this case was "devoid of any nexus" between the residence and illegal drugs. *Carpenter*, 360 F.3d at 595.

Therefore, even if Agent Wilson's affidavit failed to show probable cause to search the Biltmore house, *Leon's* good-faith exception to the exclusionary rule requires that the Defendant's motion to quash be denied.

### D. CONCLUSION

I therefore recommend that the Defendant's request for an evidentiary hearing and his motion to suppress [Docket #13] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen

(14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 22, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 22, 2010.

S/Gina Wilson
Judicial Assistant
